United States District Court
Southern District of Texas
**ENTERED**
July 19, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2919 |
| | § | |
| JEREMY EDER, J. DALE, | § | |
| B. BAKER, R. NG, and | § | |
| FORT BEND COUNTY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants Jeremy Eder ("Eder"), Raymond Ng ("Ng"), and Fort Bend County ("Fort Bend") and Defendants J. Dale ("Dale") and B. Baker's ("Baker") Motions to Dismiss (Docs. No. 7, 15, 17). The court has considered the motions, the responses, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motions be **GRANTED IN PART** and **DENIED IN PART**.

### I.  Case Background

Plaintiff filed this civil rights action against a police officer, three Fort Bend deputies, and Fort Bend for violating Plaintiff's constitutional rights. The allegations arise out of Plaintiff's arrest following the search of her home subsequent to a search warrant.

---

[1]  This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 11.

A.   **Factual History**

  The following factual account is derived from Plaintiff's live complaint.

  Plaintiff and her family reside in Rosenberg, Texas.[2] Defendant Eder, a City of Rosenberg police officer, signed an affidavit based on his alleged knowledge of illegal activity at the home, and the 240th District Court of Fort Bend County issued a search warrant for a search of Plaintiff's home.[3]  The search warrant authorized officers to search and seize cocaine and contraband as described in the affidavit.[4]

  On the morning of January 31, 2014, Eder and the other defendant officers executed the warrant, holding Plaintiff and her children, aged eleven and twelve, at gunpoint.[5]  The officers found one-and-one-half pills outside of their prescription containers: one hydrocodone pill on Plaintiff's nightstand and half of a single alprazolam ("Xanax") pill somewhere in the home, as well as six-hundred dollars in cash.[6]  At the time of the search, Plaintiff had a valid prescription for hydrocodone, and her father, who lived in

---

[2]  See Doc. 8, Pl.'s Am. Compl. p. 6.

[3]  See id.

[4]  See id. p. 6; Doc. 7-1, Ex. 1 to Def. Eder's Mot. to Dismiss, Search Warrant signed Jan. 29, 2014.

[5]  See Doc. 8, Pl.'s Am. Compl. pp. 6-7.

[6]  See id. p. 7.  Plaintiff's complaint states only that she was "not in possession" of the Xanax pill, but does not state where the pill was found. See id. p. 7.

the home, but was not present during the search, had a valid prescription for Xanax.[7]  The prescription information for both the hydrocodone and Xanax were located in the home at the time of the search.[8]  Plaintiff was arrested and charged with felony possession of controlled substances within a school zone.[9]  The seizure of the six hundred dollars was not recorded by the officers.[10]

Although Plaintiff was indicted by a grand jury, her case was dismissed due to insufficient evidence on October 20, 2014.[11]  At the time this lawsuit was filed, Plaintiff had not recovered either the pills or the money seized during the search.[12]

**B.  <u>Procedural History</u>**

Plaintiff filed her complaint on October 15, 2015, alleging unreasonable search and seizure of her property in violation of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983").[13]  On November 2, 2015, Defendant Eder filed a motion to dismiss.[14]  Plaintiff filed an amended complaint on November 23, 2015, adding claims that

---

[7]     See <u>id.</u> pp. 7, 9.

[8]     See <u>id.</u> p. 12.

[9]     See <u>id.</u>

[10]    See <u>id.</u> p. 7.

[11]    See <u>id.</u> p. 8.

[12]    See <u>id.</u> p. 7.

[13]    See Doc. 1, Pl.'s Compl.

[14]    See Doc. 7, Def. Eder's Mot. to Dismiss.

Defendant officers failed to protect Plaintiff's right to privacy and arrested her without probable cause and that Fort Bend failed to train its officers.[15]  Eder filed a supplemental brief arguing that Plaintiff's amended complaint still failed to state a claim for relief on December 2, 2015.[16]  Plaintiff filed a response to Eder's motion on December 20, 2015.[17]

On February 24, 2016, Defendant Ng filed a motion to dismiss.[18] Plaintiff filed a response on March 16, 2016.[19]  On April 11, 2016, Defendants Fort Bend, Dale, and Baker filed a motion to dismiss.[20] Plaintiff filed a response on May 2, 2016.[21]

## II.  Legal Standard

### A.  Dismissal Standard

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as

---

[15]    See Doc. 8, Pl.'s Am. Compl.

[16]    See Doc. 9, Suppl. to Def. Eder's Mot. to Dismiss.

[17]    See Doc. 10, Pl.'s Resp. to Def. Eder's Mot. to Dismiss.

[18]    See Doc. 15, Def. Ng's Mot. to Dismiss.

[19]    See Doc. 16, Pl.'s Resp. to Def. Ng's Mot. to Dismiss.

[20]    See Doc. 17, Defs.' Mot. to Dismiss.

[21]    See Doc. 18, Pl.'s Resp. to Defs.' Mot. to Dismiss.

4

true all well-pleaded facts.  <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

**B.  <u>Qualified Immunity</u>**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Gentilello v. Rege</u>, 627 F.3d 540, 547 (5th Cir. 2010) (finding qualified immunity applied in a suit brought by a professor against university supervisors).

5

While qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009). A plaintiff can meet this burden by alleging facts showing that the defendant committed a constitutional violation and that the defendant's actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. Atteberry v. Nocono General Hosp., 430 F.3d 245, 253 (5th Cir. 2005). The Fifth Circuit has stated that upon an assertion of qualified immunity, a plaintiff must meet a heightened pleading standard to explain why the defendant cannot maintain the defense. Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

### III.  Analysis

Defendants move to dismiss all of Plaintiff's claims. Defendants argue that Plaintiff fails to state a claim under either the Fourth or Fourteenth Amendment. Defendant officers assert that qualified immunity protects them from any liability. Defendant Fort Bend contends that Plaintiff has failed to allege any plausible facts that show there is a custom or policy which could have been the moving force behind any constitutional violation. Defendants Baker and Dale additionally argue that Plaintiff's complaint fails to state any personal involvement against them. The court considers Defendants' arguments in turn.

6

A.   <u>Section 1983 Standard</u>

A plaintiff can establish a prima facie case under Section 1983[22] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law. <u>Doe v. Rains Cty. Indep. Sch. Dist.</u>, 66 F.3d 1402, 1406 (5th Cir. 1995).   The statute creates no substantive rights but instead provides remedies for deprivations of rights created under federal law. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989).

"A municipality is liable only for acts directly attributable to it through some official action or imprimatur." <u>Valle v. City of Houston</u>, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted). To establish municipal liability under Section 1983, a plaintiff must prove three elements: "1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose moving force is the policy or custom." <u>Zarnow v. City of Wichita Falls</u>, 614 F.3d 161, 166 (5th Cir. 2010).   A local government may be sued

---

[22]   The provision reads, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

under Section 1983 "if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." Id. (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988) (plurality opinion)). "Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Brown v. Bryan Cty., Okla., 219 F.3d 450, 457 (5th Cir. 2000).

## B. Fourth Amendment Liability

Plaintiff argues that Defendants violated her Fourth Amendment rights by wrongfully arresting for possession of a controlled substance after finding two legally prescribed pills outside of their prescribed containers in her residence. Defendants respond that they are entitled to qualified immunity because they found the pills pursuant to a search warrant. They further argue that a grand jury indictment independently establishes probable cause, and therefore probable cause necessarily existed when the officers found pills outside their prescribed containers.

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons

8

or things to be seized." U.S. Const. amend. IV. "Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest 'are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" Freeman v. Gore, 483 F.3d 404, 413 (5th Cir. 2007) (quoting United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th Cir. 1991) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)); see also Levine, 80 F.3d at 132 ("The presence of probable cause is a mixed question of fact and law").

A grand jury indictment is usually sufficient to establish probable cause. See Gerstein v. Pugh, 420 U.S. 103, 117 (1975). When facts supporting an arrest "are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010). The chain of causation remains intact, however, if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988). In other words, "the chain of causation is broken only where all the

facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary . . . ." Id. at 1427–28.

Defendants argue that probable cause existed because Plaintiff was indicted by a grand jury, noting that the eventual dismissal was "without prejudice to refile." Plaintiff responds that a grand jury indictment breaks the chain of causation only when all the evidence is presented to a grand jury. Plaintiff argues that if Defendant officers had included all information in their reports and in their grand jury testimony, no reasonable grand jury would have indicted her for possession of a prescription medication that she had a legal right to possess.

In their motion to dismiss, Defendants have provided a copy of the grand jury indictment, along with notice that the charges were subsequently dismissed for insufficient evidence. Accepting Plaintiff's well-pleaded allegations as true, the court agrees that if all relevant facts were presented to a grand jury, namely, that Plaintiff and her father had valid prescriptions for the prescription medications in her home at the time of the search, that a grand jury would not have indicted her. The Fifth Circuit has held that officers may not rely on qualified immunity when they deliberately conceal exculpatory evidence. Hernandez v. Terrones, 397 F. App'x 954, 965 (5th Cir. 2010) (unpublished) (quoting Geter

v. Fortenberry, 849 F.2d 1550, 1162 (5th Cir. 1989) for the proposition that an officer may not willfully ignore exculpatory evidence).  Based on the complaint's allegations, Defendants are not entitled to qualified immunity at this time.  See Basler v. Barron, 2016 WL 1672573, *4 (S.D. Tex. Apr. 27, 2016) (holding that allegation of withheld information was sufficient to deny qualified immunity in Rule 12(b)(6) context).

Defendants next argue that the officers are entitled to qualified immunity because the complaint concedes that the seizure of the pills and Plaintiff's subsequent arrest were pursuant to a valid search warrant.  The parties disagree whether the search warrant authorized the seizure of the prescription medication as Defendants characterize the pills as "illegal drugs" found during a legal search and Plaintiff argues that her possession of the pills was legal.[23]

The warrant authorized officers to seize cocaine and "any illicit contraband" as described in the affidavit.[24]  The affidavit, in turn, describes contraband including equipment, currency, telephones, and firearms.[25]  Defendants argue that the pills were "illegal drugs" based on Section 481.117 of the Texas Health and

---

[23]    See Doc. 7, Def. Eder's Mot. to Dismiss p. 4; Doc. 15, Def. Ng's Mot. to Dismiss p. 4; Doc. 17, Defs.' Mot. to Dismiss p. 11.

[24]    See Doc. 7-1, Ex. 1 to Def. Eder's Mot. to Dismiss, Search Warrant signed Jan. 29, 2014.

[25]    See Ex. 7-1, Doc. 7-1, Ex. 1 to Def. Eder's Mot. to Dismiss, Aff. of Def. Eder pp. 2-3.

Safety Code and that probable cause for Plaintiff's arrest was therefore "necessarily extant."

The court does not agree.  Section 481.117(a) states that:

> Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3, unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

Tex. Health & Safety Code § 481.117(a).  The parties do not dispute that Xanax and hydrocodone are included in Penalty Group 3.  See Tex. Health & Safety Code § 481.117(a)(2), (4) (listing "alprazolam" and "dihydrocodeinone").  But, by the statute's language, hydrocodone and Xanax are not "illegal drugs" when they are obtained by valid prescriptions.  See Tex. Health & Safety Code § 481.117(a).  Nor are they "contraband" as defined by the warrant.

Finding that seizure of prescription medication was not included in the warrant, the court must consider whether qualified immunity nonetheless applies to Plaintiff's arrest.  The issue to be decided is whether Plaintiff has alleged that Defendants' actions were objectively unreasonable in light of the clearly established law at the time of their action.  See Atteberry, 430 F.3d at 253.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  "[I]f a reasonable officer could

12

have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." <u>Brown v. Lyford</u>, 243 F.3d 185, 190 (5th Cir. 2001).

Defendants argue that the presence of any controlled substance outside of its pharmacy-labeled bottle is sufficient to establish probable cause to arrest Plaintiff and in support cite the court to <u>Kelly v. State</u>, 2010 WL 1478907, at *1, 3-4 (Tex. App.–Beaumont 2010).   There, the defendant challenged his conviction for possession of a dangerous drug without a prescription on the grounds of insufficient evidence, claiming that he had a prescription for the drug.[26]

The court first considered that the Texas Health and Safety Code prohibits possession of a controlled substance except as prescribed by a licensed practitioner.  Section 483.041(a) states, "A person commits an offense if the person possesses a dangerous drug unless the person obtains the drug from a pharmacist acting in the manner described by Section 483.042(a)(1) or a practitioner acting in the manner described by Section 483.042(a)(2)."

Dovetailing with Section 481.117(a) quoted above, Section 482.042 requires that any prescription drug must have a label attached to the immediate container in which the drug is delivered or offered to be delivered to the ultimate consumer of the drug.

---

[26]    There, the defendant was charged with violating Texas Health and Safety Code §§ 483.041(a), and 483.042(2)(1), (2).

Tex. Health and Safety Code § 483.042(a)(1)(B).

Although Kelly testified that he had prescriptions for the drugs seized from his person at the time of his arrest, other facts suggested that his possession of the medications was not legal. Kelly could not produce an original prescription bottle for any of the drugs found on his person and could not recall the name of the prescribing physician or the pharmacy that filled the prescriptions. Some pills were found in several plastic bags stuffed in his boots; some pills were commingled in an unlabeled pill bottle also found in a boot. Kelly also falsely claimed to the arresting officer that he had the pills because was working undercover.

In light of this testimony, the court found that the evidence was legally sufficient to sustain a verdict for possession of dangerous drugs without a prescription. Notably, the court did not hold that the mere presence of a controlled substance outside of its labeled container was sufficient to sustain a conviction for this offense. Thus, <u>Kelly</u> does not provide the Defendant officers a reasonable basis to arrest Plaintiff for possessing a controlled substance outside of its pharmacy bottle.

Defendants next argue that although Plaintiff's complaint states that she held a prescription and was the ultimate user of the hydrocodone and that her father was the ultimate user of the Xanax, these are affirmative defenses and therefore do not apply to

Defendant officers' probable cause determination.   However, as
explained above, possession of a controlled substance via a
prescription is not a crime; it is the possession of a controlled
substance in the <u>absence</u> of a prescription that is proscribed by
the statute.   <u>See</u> Tex. Health & Safety Code § 481.117 (stating that
a "person commits an offense . . . unless the person obtains the
substance directly from . . . a valid prescription.").   <u>See also</u>
<u>Burnett v. State</u>, 2016 WL 1723035 at *4 (Tex. App.–Eastland Apr.
29, 2016)(stating that although the State had represented that it
was illegal to carry pills outside of their prescription
containers, the court could find no such law.)

Thus, the court cannot agree that an individual's valid
prescription for a controlled substance is an affirmative defense
that may be disregarded when an officer is assessing the legality
of possessing one hydrocodone pill found on a nightstand in that
person's residence.[27]

The court finds that Defendant officers are not entitled to
qualified immunity based on the allegations in Plaintiff's
complaint.   It is **RECOMMENDED** that Defendants' motions to dismiss
Plaintiff's Fourth Amendment claims be **DENIED** at this time.

## C.  <u>Due Process Violation</u>

Plaintiff additionally argues that Defendants violated her

---

[27]     If this were the case, then many citizens risk a warrantless arrest
for placing their prescribed medications in a weekly pill container.

Fourteenth Amendment right to privacy concerning her storage of prescription medication and that Defendants failed to protect her medical privacy from unreasonable intrusions.  Defendants respond that Plaintiff has not stated a claim under the Fourteenth Amendment because she cannot bring a Fourteenth Amendment due process claim when her claim was more properly brought under the Fourth Amendment.

The Supreme Court has consistently held that when a "more specific" provision exists, a constitutional claim must be considered under the provision, not the more general standard of traditional due process.  Cty. of Sacramento v. Lewis, 523 U.S. 833, 834-44 (1998); Albright v. Oliver, 510 U.S. 266, 273 (1994). The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV.

Plaintiff responds that her claim is not based on an unlawful arrest, which she admits would be precluded by the Fourth Amendment, but is instead based on Defendants' violation of her Fourteenth Amendment right to privacy.  The court characterizes this claim of a right to privacy as a substantive due process claim as it relates to certain personal decisions for her medical care.

In Whalen v. Roe, 429 U.S. 589 (1977), the Supreme Court recognized that the Fourteenth Amendment's substantive due process

16

protection covered both "the individual interest in avoiding disclosure of personal matters," and the "interest in independence in making certain kinds of important decisions." Id. at 599. The Supreme Court has found that the latter protection applies to personal decisions "relating to marriage, procreation, contraception, family relationships, child rearing, and education." Lawrence v. Texas, 539 U.S. 558, 573-74 (2003).

Plaintiff contends that she has a "clearly established" Fourteenth Amendment right to privacy concerning her storage and use of prescription medication. Although Plaintiff avers that her right is clearly established, the court can find no cases that support the proposition that the government may not invade a plaintiff's privacy with regard to her storage and use of medication. While there is a due process right protecting the disclosure of an individual's prescription medication, there is no clearly established analogous right protecting an individual's method of storage and use of the medication. See Whalen, 429 U.S. at 599-600 (acknowledging the right of privacy over the disclosure of personal matters). The court accordingly **RECOMMENDS** that Plaintiff's substantive due process claim be **DISMISSED**.

## D. Failure to Protect

Plaintiff alleges that Defendants failed to protect her from an "unreasonably unlawful arrest," a substantive due process claim under the Fourteenth Amendment. Defendants argue there are no

17

allegations of conduct that create a plausible claim based on the officers' failure to protect Plaintiff.

Ordinarily, a state official has no constitutional duty to protect an individual from private violence. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197, (1989) (holding that state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"). In DeShaney, however, the Court clarified that this general rule is not absolute: "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 198. When the state affirmatively acts to restrain an individual's freedom to act on his own behalf "through incarceration, institutionalization, or other similar restraint of personal liberty," the state creates a "special relationship" between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence. Id. at 200.

In addition to instances of a "special relationship," several courts have read the Court's opinion in DeShaney to suggest a second exception to the general rule against state liability for private violence. Several circuits have interpreted the Supreme Court's language in DeShaney to suggest that state officials may have a duty to protect an individual from injuries inflicted by a

third party if the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury.  The Fifth Circuit, however, has repeatedly stated that it does not recognize the "state-created danger" theory of liability under DeShaney.  See Scanlan v. Texas A&M Univ., 343 F.3d 533, 537 (5th Cir. 2003); Piotrowski v. City of Houston, 237 F.3d 567, 584 (5th Cir. 2001).

Here, Plaintiff alleges that Defendants failed to protect her from an unreasonable arrest.  Plaintiff does not allege that any private violence occurred; she instead argues that Defendants failed to protect Plaintiff from being arrested by the officers themselves.  Although Defendants' arrest of Plaintiff creates a special relationship, Plaintiff does not assert that she suffered any injury during or after her arrest.  To the extent that Plaintiff complains that her arrest was unlawful, the "more specific provision" of the Fourth Amendment, not the due process standard of the Fourteenth Amendment, applies.  See Cty. of Sacramento, 523 at 834-44.

Plaintiff has not asserted a plausible claim that Defendants failed to protect her from arrest.  The court accordingly **RECOMMENDS** that Plaintiff's failure to protect claim be **DISMISSED**.

E. **Fort Bend's Motion to Dismiss**

Defendant Fort Bend argues that Plaintiff cannot maintain a claim against it based on a policy or custom responsible for her

19

alleged constitutional violation.  Plaintiff responds that she has pleaded a viable failure-to-train claim against Fort Bend.

A county may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson,563 U.S. 51, 60 (2011).  To succeed on a claim under Section 1983, a plaintiff must demonstrate that the county "had some inadequate custom or policy that acted as the moving force behind a constitutional violation."  Forgan v. Howard Cty., 494 F.3d 518, 522 (5th Cir. 2007)(citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978)); see also Connick, 563 at 60-61.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick, 563 at 61.

Courts have recognized that, under limited circumstances, the failure to train or to supervise its employees may give rise to local-government liability under Section 1983.  See id.; Zarnow, 614 F.3d at 169-70 (5th Cir. 2010).  In failure-to-train cases, a plaintiff must prove: (1) the inadequacy of the procedures; (2) the policymaker's deliberate indifference; and (3) causation.  Zarnow, 614 F.3d at 170.

A local government can be held liable only when its failure to train or to supervise amounted to deliberate indifference to the constitutional rights of its citizens.  Connick, 131 S. Ct. at 1359

20

(quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). In
order to show deliberate indifference by the municipality, a
plaintiff must generally show a pattern of similar constitutional
violations by untrained employees. Connick, 131 S. Ct. at 1359. To
rely on a "single incident" exception to the general rule, a
"plaintiff must prove that the 'highly probable' consequence of a
failure to train would result in the specific injury suffered, and
that the failure to train represents the moving force behind the
Constitutional violation." Estate of Davis ex rel. McCully v. City
of N. Richland Hills, 406 F.3d 375, 385-86 (5th Cir. 2005). To
survive a motion to dismiss, a plaintiff must allege either a
pattern of similar acts or that the highly probable consequence of
a failure to train would result in injury to the plaintiff. Id. at
381-86.

Where the question is not whether the officers received any
training in the constitutional requirements, but whether the
officers received adequate training, a plaintiff cannot rely on
proof that additional training would have created a better officer
or would have reduced the likelihood of a constitutional violation
but must prove that the "officers were so untrained as to be
unaware" of constitutional limitations. Pineda v. City of Houston,
291 F.3d 325, 333 (5th Cir. 2002); see also Canton, 489 U.S. at 391.
The Supreme Court has cautioned, "A municipality's culpability for
a deprivation of rights is at its most tenuous where a claim turns

on a failure to train." Connick, 131 S. Ct. at 1359.

However, this court has found that at the motion to dismiss stage, a plaintiff "need not specifically state what the policy is . . . but may be more general." Thomas v. City of Galveston, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011). A plaintiff must still "provide fair notice to the defendant, and this requires more than generically restating the elements of municipal liability." Id. Such allegations could include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." Id.

Here, Plaintiff argues that Fort Bend failed to train its officers based on its failure to discipline Defendant officers following Plaintiff's arrest. Citing the standard in Davis, Plaintiff states that Fort Bend's failure to train its officers was deliberately indifferent to her constitutional rights despite highly predictable dangers, and that the county's failure was the moving force behind Defendant officers' actions. See Davis, 406 F.3d at 385. Fort Bend responds that Plaintiff has failed to establish a policy or custom or a policymaker and has not stated any constitutional violation against Defendant.

Fort Bend is incorrect that Plaintiff has not alleged a policymaker; Plaintiff specifically notes that Fort Bend's Sheriff

or its Commissioner's Court is the final policymaker.  Fort Bend also argues that Plaintiff fails to assert a policy or custom. Fort Bend is correct that Plaintiff never explicitly states any custom or policy that was the moving force behind the alleged deprivation of her rights.  In her response, Plaintiff contends that her pleading, which alleges that Fort Bend failed to train, discipline, or supervise its officers in conformity with the Fourth and Fourteenth Amendments is sufficient to state a policy.  The court disagrees.

In Plaintiff's explanation of Fort Bend's failure to train, Plaintiff states that Fort Bend was "deliberately indifferent" to Plaintiff's constitutional rights despite the "obvious, known, and highly predictable" dangers of such failures.[28]  Although Plaintiff alleges via these statements that Fort Bend was deliberately indifferent, Plaintiff does not allege or explain how Fort Bend's training policy was inadequate. See Zarnow, 614 F.3d at 170. Absent an allegation that the municipality's training was inadequate, Plaintiff cannot plead that any such inadequate training actually caused her injury.  See id.; Almanza v. Salazar, 33 F. Supp. 3d 747, 753 (holding that even under the single-incident exception, a plaintiff must allege inadequacies of training with particularity and show that inadequacies were moving force for actual injury).

---

[28]     See Doc. 8, Pl.'s Am. Compl. p. 32.

Although Plaintiff is not required to raise specific facts proving the existence of a policy, Plaintiff's vague allegations are insufficient to meet the necessary standard to find a municipality liable for the actions of individual officers. <u>See</u> <u>Thomas</u>, 800 F. Supp. 2d at 844-45; <u>see also</u> <u>Harvey v. Montgomery Cty.</u>, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (holding that a plaintiff could not maintain a failure to train claim against a municipality when officers arrested and injured an individual without probable cause).

Plaintiff also states that if the policymaker is familiar with inadequate policies, he has ratified Defendant officers' conduct. The Fifth Circuit has found that an authorized policymaker's approval of a subordinate's decision may create a ratification chargeable to the municipality. <u>Peterson v. City of Ft. Worth</u>, 588 F.3d 838 (5th Cir. 2009). Such a claim may only be based on "extreme factual situations." <u>Id.</u>; <u>see also</u> <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 798 (5th Cir. 1998) (holding that an "extreme factual situation" did not exist when police officer shot a fleeing suspect). A "mere failure to investigate" a subordinate's discretionary decisions cannot support such a theory. <u>Milam v. City of San Antonio</u>, 113 F. App'x 622, 626-27 (5th Cir. 2004) (unpublished)(citing <u>Praprotnik</u>, 485 U.S. at 130).

Here, Plaintiff posits only that if Fort Bend's policymaker knew of the county's deficient training, then it ratified the

24

officers' conduct because Defendant officers were not investigated by the county for misconduct.  Under Fifth Circuit precedent, this is insufficient to maintain a ratification theory of liability.

Finding that Plaintiff has failed to state a claim under either a policy or custom or a ratification of Defendant officers' conduct, the court accordingly **RECOMMENDS** that Plaintiff's claims against Fort Bend be **DISMISSED**.

## F.  <u>Personal Involvement of Officers</u>

Defendants Dale and Baker argue that the claims against them should be dismissed because the current pleadings fail to specify actual personal involvement.  Plaintiff responds that alleged that all officers entered her home and arrested her without probable cause.

Personal involvement is an essential element of a civil rights case.  <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983). Personal involvement limits a supervisory official's liability to situations where they "affirmatively participate in acts that cause constitutional deprivation" or when they "implement unconstitutional policies that causally result in plaintiff's injury."  <u>Mouille v. City of Live Oak</u>, 977 F.2d 924, 929 (5th Cir. 1992).

Here, Plaintiff alleges that officers, including Defendants Dale and Baker, physically entered her home subject to a warrant, seized money without reporting it, and arrested Plaintiff without

probable cause.  Defendants are not supervisors and Plaintiff has alleged specific acts sufficient to establish personal involvement. Accordingly, the court **RECOMMENDS** that Defendants Dale and Baker's motion be **DENIED**.

### V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motions to dismiss be **GRANTED IN PART** and **DENIED IN PART** and that Defendant Fort Bend County be **DISMISSED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 19th  day of July, 2016.

U.S. MAGISTRATE JUDGE

26