United States District Court
Southern District of Texas
**ENTERED**
February 21, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2919 |
| | § | |
| JEREMY EDER, et al., | § | |
| | § | |
| Defendants. | § | |

### AMENDED MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] are (1) Defendants Jeremy Eder ("Eder") and Raymond Ng's ("Ng") Motion for Summary Judgment (Doc. 38); (2) Defendants Brian Baker ("Baker") and Josh Dale's ("Dale") Motion for Summary Judgment (Doc. 39); (3) Plaintiff's Motion to Exclude Defendant Officers' Summary Judgment Evidence (Doc. 40); and (4) Plaintiff's Opposed Motion for Leave to File an Amended Complaint (Doc. 42). The court has considered the motions, the responses, all other relevant filings, and the applicable law. The court **DENIES** Plaintiff's motion for leave to amend and **STRIKES** Plaintiff's motion to exclude. Furthermore, for the reasons set forth below, the court **RECOMMENDS** that Defendants Eder and Ng's motion be **GRANTED IN PART AND DENIED IN PART** and Defendants Baker and Dale's motion be **GRANTED IN PART AND DENIED IN PART**.

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 11, Ord. Dated Dec. 28, 2015.

The original Memorandum, Recommendation, and Order is amended in light of Defendant Eder's change of course from the reliance on inapplicable state law to the citation of applicable state law that alters the court's qualified-immunity analysis.

## I.  Case Background

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that four peace officers violated her constitutional rights when they arrested her and seized her property during a search of her home.

## A.  Factual Background

The four individual defendants (collectively "Defendant Officers") in this action were members of Defendant Fort Bend County's ("Fort Bend") Narcotics Task Force ("Task Force").[2] Defendant Officers represented three local law-enforcement agencies: Defendant Eder worked for the Rosenberg Police Department; Defendant Ng worked for the Sugar Land Police Department; Defendants Baker and Dale worked for Defendant Fort Bend's Sheriff's Office.[3] Defendant Dale served as the Task Force's supervisor, and Defendant Baker served as the assistant

---

[2]     See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 6; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶ 5; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 5; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 5.

[3]     Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶¶ 2, 6; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶¶ 2, 5; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶¶ 3-4, 7; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶¶ 3-4, 7.

supervisor.[4]

Defendant Eder reported to the Task Force that "he had developed reliable information that Plaintiff's husband, Sherman McAndrew Jones[("Sherman Jones"),] was apparently operating a crack cocaine sales and distribution business out of [his and Plaintiff's] residence," which was located within 1,000 feet of an elementary school.[5]  On January 29, 2014, Defendant Eder obtained an arrest warrant for Sherman Jones and a search warrant for the residence based on Defendant Eder's affidavit detailing an investigation into Sherman Jones' illegal activity.[6]  The search warrant authorized entry into the residence without knocking or announcing the officers' purpose in order to search for "illicit contraband, namely **Cocaine**, and **any illicit contraband, as described in said affidavit**."[7]  In the supporting affidavit,

---

[4]     Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 6; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 6.

[5]     Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 12; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 12.

[6]     See Doc. 38-3, Ex. 3, to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 5; Doc. 38-6, Ex. 6 to Defs. Eder & Ng's Mot. for Summ. J., Warrant & Aff. in Support of Warrant; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 13; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 13.

[7]     Doc. 38-6, Ex. 6 to Defs. Eder & Ng's Mot. for Summ. J., Warrant; see also Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶¶ 13-14; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶¶ 13-14; cf. Doc. 30, Pl.'s 2ᵈ Am. Compl. p. 7 (stating that a county district court issued the warrant that allowed a search for "illicit items (including Cocaine)" and "other specific items"); Doc. 32, Defs. Baker & Dale's Ans. to Pl.'s 2ᵈ Am. Compl. pp. 11-12 (admitting that the warrant allowed a search for "illicit items (including Cocaine)" and "other specific items" but denying that the other items were not relevant to Plaintiff's arrest as alleged

Defendant Eder identified "Cocaine" as the only drug targeted in the search and listed currency among the types of evidence "relative to the trafficking of narcotics."[8]

On January 31, 2014, the Task Force, in coordination with Defendant Fort Bend's Regional SWAT (Special Weapons and Tactics) team, executed the search and arrest warrants.[9]  Defendant Eder was in charge of the operational aspects of the investigation into Sherman Jones and "led the execution of a search warrant upon Plaintiff's residence."[10]  The officers escorted Plaintiff outside the residence where she remained throughout the search.[11]

During the search, a nonparty officer found one and one-half pills in a small dish on a windowsill in a bedroom where Plaintiff

---

in Plaintiff's amended complaint); Doc. 33, Defs. Eder & Ng's Ans. to Pl.'s 2$^{d}$ Am. Compl. pp. 3-4 (admitting that the warrant allowed a search for "contraband and illegal drugs").

[8]      Doc. 38-6, Ex. 6 to Defs. Eder & Ng's Mot. for Summ. J., Def. Eder's Aff. in Support of Warrant pp. 3-4.

[9]      See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 6; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶ 5; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶¶ 14-15; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 15.

[10]      Doc. 30, Pl.'s 2$^{d}$ Am. Compl. p. 1; see also Doc. 32, Defs. Baker & Dale's Ans. to Pl.'s 2$^{d}$ Am. Compl. p. 8; Doc. 33, Defs. Eder & Ng's Ans. to Pl.'s 2$^{d}$ Am. Compl. p. 2; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶¶ 8, 19; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶¶ 8, 19.

[11]      See Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl. pp. 34, 35; Doc. 41-1, Ex. A to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Dep. of Pl. pp. 21, 107.

and her husband were sleeping.[12]   Defendant Eder consulted with representatives of a poison control center to confirm that the partial pill was alprazolam and the whole pill was hydrocodone.[13] One of the nonparty Task Force members "seized and collected all narcotic evidence" ostensibly "under the authority of the search warrant," including the alprazolam and hydrocodone tablets.[14] Defendants Eder and Ng also searched the residence for labels or pill containers for the pills but found none.[15]  In addition to the alprazolam and hydrocodone pills, the officers discovered, among other items, a digital scale, a police radio, cell phones, miscellaneous papers, and a glass beaker.[16]  Defendant Eder did not list any currency in the search inventory, and Defendant Officers all denied that they seized any currency.[17]

[12]    See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 6; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶ 6; Doc. 39-3, Ex. 3-B-3 to Defs. Baker & Dale's Mot. for Summ. J., Photograph.

[13]    See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 7.

[14]    Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 27; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 27.

[15]    See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 7; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶ 7.

[16]    See Doc. 38-6, Ex. 6 to Defs. Eder & Ng's Mot. for Summ. J., Search Warrant Return & Inventory; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 33; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 33.

[17]    Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 13; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Ng ¶ 13; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 41; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J.,

At the scene, no officer asked Plaintiff whether the
alprazolam and hydrocodone pills belonged to her or someone else,
inquired whether anyone possessed a prescription for the pills, or
even mentioned the pills to her at all.[18]  Plaintiff asked why she
and Sherman Jones were outside during the search and what was
happening, but Defendant Eder responded that she "needed to be
quiet and let them do their job."[19]  Plaintiff did not communicate
or interact "in any substantive way" with Defendants Baker and
Dale.[20]

Defendant Eder alone made the decision to arrest and
effectuated the arrest of Plaintiff for jointly possessing the
alprazolam and hydrocodone pills.[21]  No officer notified Plaintiff

---

Aff. of Def. Baker ¶ 41; see also Doc. 38-6, Ex. 6 to Defs. Eder & Ng's Mot. for
Summ. J., Search Warrant Return & Inventory.

[18]    See Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of
Pl. p. 37; Doc. 41-1, Ex. A to Pl.'s Consol. Resp. to Def. Officers' Mots. for
Summ. J., Dep. of Pl. p. 107; Doc. 41-6, Ex. F to Pl.'s Consol. Resp. to Def.
Officers' Mots. for Summ. J., Decl. of Pl. p. 1.

[19]    Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl.
pp. 35-37.

[20]    Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of
Def. Dale ¶¶ 32, 36; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J.,
Aff. of Def. Baker ¶¶ 32, 36.

[21]    Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of
Def. Eder ¶ 12; see also Doc. 30, Pl.'s 2$^d$ Am. Compl. p. 8 (stating that she was
"charged with two counts of possession of a controlled substance in a school
zone"); Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def.
Ng ¶ 11 (stating that Defendant Eder made the decision to arrest Plaintiff); Doc.
38-5, Ex. 5 to Defs. Eder & Ng's Mot. for Summ. J., Indictment (listing charge
as "POSS CS PG 3 <28G DRUG FREE"); Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot.
for Summ. J., Aff. of Def. Dale ¶ 34 (stating that Defendant Eder made the
decision to arrest Plaintiff for joint possession);  Doc. 39-2, Ex. 2 to Defs.
Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 34 (stating that Defendant
Eder made the decision to arrest Plaintiff for joint possession).

of the charge on which she was being arrested.[22]  When Plaintiff
returned to the residence after being released from the jail
facility, she noticed that $600 in currency was missing from the
pocket of a shirt hanging in the closet.[23]

A grand jury was empaneled to hear the evidence against
Plaintiff on the charge of possession of a controlled substance in
Penalty Group 3 in a drug-free zone.[24]  Neither Plaintiff nor any
of Defendant Officers appeared before the grand jury.[25] At the time
of the grand jury hearing, Plaintiff had not provided her attorney
with the label from the original container for either pill found in
her home, and Defendant Officers did not know that she was claiming
that she had a prescription for hydrocodone and her father had a
prescription for alprazolam.[26]  On February 17, 2014, the grand jury

---

[22]      Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl.
p. 37; Doc. 41-6, Ex. F to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ.
J., Decl. of Pl. p. 1.

[23]      See Doc. 38-8,  Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep.
of Pl. pp. 44-45, 48-49, 75.  Plaintiff alleged that Defendant Officers seized
the $600.  See Doc. 30, Pl.'s 2d Am. Compl. p. 6.

[24]      See Doc. 38-5, Ex. 5 to Defs. Eder & Ng's Mot. for Summ. J.,
Indictment (listing charge as "POSS CS PG 3 <28G DRUG FREE").

[25]      See Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl.
of Def. Eder ¶ 10; Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ. J., Decl.
of Def. Ng ¶ 9; Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of
Pl. p. 108; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of
Def. Dale ¶ 38; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff.
of Def. Baker ¶ 38.

[26]      Doc. 38-1, Ex. 1 to Defs. Eder & Ng's Mot. for Summ. J., Pl.'s
Resps. to Defs. Eder & Ng's Reqs. for Admiss. No. 18; See Doc. 38-3, Ex. 3 to
Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 11 ("I could not have
informed the [g]rand [j]ury that Plaintiff claimed to have a prescription for the
hydrocodone or claimed her father had a prescription for the alprazolam because
Plaintiff never made that representation to me and no one informed me Plaintiff
had ever so contended."); Doc. 38-4, Ex. 4 to Defs. Eder & Ng's Mot. for Summ.

returned a true bill finding probable cause for the felony charge that Plaintiff "knowingly and intentionally possess[ed] a controlled substance" within 1,000 feet of an elementary school.[27]

On October 20, 2014, the presiding judge dismissed the charges against Plaintiff on the prosecutor's motions for lack of evidence to prove the case beyond a reasonable doubt.[28]   A handwritten notation on the motions stated "INSUFF LINKS BETWEEN DEFENDANT AND DRUGS."[29]

Plaintiff testified that she did not learn that the alprazolam

---

J., Decl. of Def. Ng ¶ 10 (same); Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 39 ("I could not have informed the [g]rand [j]ury that Plaintiff was claiming to have a prescription for the hydrocodone (or that she was claiming that her father had a prescription for the alprazolam) because Plaintiff never made that representation to me.  In fact, no one ever informed me that Plaintiff had ever made either of those claims until after she filed this suit."); Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 39 (same).

[27]     Doc. 38-5, Ex. 5 to Defs. Eder & Ng's Mot. for Summ. J., Indictments; see also Doc. 38-3, Ex. 3 to Defs. Eder & Ng's Mot. for Summ. J., Decl. of Def. Eder ¶ 10; Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 38; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 38.

[28]     Doc. 38-5, Ex. 5 to Defs. Eder & Ng's Mot. for Summ. J., Mots. to Dismiss & Ords. of Dismissal; see also Doc. 30, Pl.'s 2[d] Am. Compl. p. 9 (stating that the dismissal order noted that the evidence was insufficient to prove beyond a reasonable doubt and that the links between Plaintiff and the drugs were insufficient); Doc. 32, Defs. Baker & Dale's Ans. to Pl.'s 2[d] Am. Compl. p. 13 (admitting, with regard to the dismissal of the charges, only that the prosecutor dismissed them "with leave to refile"); Doc. 33, Defs. Eder & Ng's Ans. to Pl.'s 2[d] Am. Compl. p. 4 (admitting that "an assistant district attorney exercised prosecutorial discretion and withdrew the criminal charges the same district attorney's office found were supported by probable cause and warranted criminal charges [and] . . . that an assistant district attorney formed the opinion that[,] although the charges filed against Plaintiff were supported by probable cause, the prosecutor was of the opinion that State of Texas could not prove the charges in criminal court under the heightened burden of beyond reasonable doubt").

[29]     Doc. 38-5, Ex. 5 to Defs. Eder & Ng's Mot. for Summ. J., Mots. to Dismiss & Ords. of Dismissal.

and hydrocodone pills served as the basis of her arrest until she read the indictment.[30]  Plaintiff also testified that she possessed a valid prescription for the hydrocodone and that her father possessed a valid prescription for the alprazolam.[31]  Plaintiff represented that she had given the alprazolam prescription and the prescription bottles for both alprazolam and hydrocodone to her criminal defense attorney but, at the time of her deposition, had not attempted to have them returned to her.[32]

In discovery for this case, Plaintiff produced a prescription for Lortab (a narcotic pain reliever containing hydrocodone and acetaminophen), which was prescribed for pain associated with a facial abscess in January 13, 2013, and which provided for fifteen pills with no refills.[33]  Plaintiff also produced a medical note pertaining to James Jackson's visit to an emergency room on May 16,

---

[30]     Doc. 41-1, Ex. A to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Dep. of Pl. p. 107.

[31]     Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl. pp. 10-20; Doc. 41-1, Ex. A to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Dep. of Pl. p. 9; see also Doc. 41-2, Ex. B to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Prescription; Doc. 41-3, Ex. C to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Progress Note Dated May 16, 2013.

[32]     Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl. pp. 12-15, 20-21.

[33]     See Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl. pp. 83-84 (describing her medical issue as an ear infection); Doc. 41-2, Ex. B to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Prescription; Doc. 41-8, Ex. H to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., After Care Instructions p. 2.

2013.[34]  The note included a prescription for Xanax (brand name for alprazolam) to be taken once or twice per day as needed.[35]  The prescription was for sixty pills with no refill.[36]  Plaintiff testified that her father occasionally lived in the residence, and, when he did, he stayed in her sons' room.[37]

## B.  **Procedural Background**

Plaintiff filed her complaint on October 5, 2015, alleging unreasonable seizures of her person and property (pills and currency) in violation of the Fourth and Fourteenth Amendments to the United States Constitution.[38]  On November 2, 2015, Defendant Eder filed a motion to dismiss.[39]  Plaintiff filed an amended complaint on November 23, 2015, and, on December 2, 2015, Eder filed a supplemental motion arguing that Plaintiff's amended complaint also failed to state a claim for relief.[40]  On February 24, 2016, Defendant Ng filed a motion to dismiss.[41]  On April 11,

---

[34]    See Doc. 41-3, Ex. C to Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J., Progress Note Dated May 16, 2013.

[35]    See id.

[36]    See id.

[37]    See Doc. 38-8, Ex. 8 to Defs. Eder & Ng's Mot. for Summ. J., Dep. of Pl. pp. 25-27, 70-71.

[38]    See Doc. 1, Pl.'s Compl.

[39]    See Doc. 7, Def. Eder's Mot. to Dismiss.

[40]    See Doc. 8, Pl.'s Am. Compl.; Doc. 9, Def. Eder's Suppl. Mot. to Dismiss.

[41]    See Doc. 15, Def. Ng's Mot. to Dismiss.

10

2016, Defendants Fort Bend, Baker, and Dale filed a motion to dismiss.[42]

On July 19, 2016, the court entered a memorandum recommending that Defendants' motions to dismiss be granted in part and denied in part.[43]  The court interpreted Plaintiff's privacy and failure-to-protect claims as alleging violations of substantive due process and found those claims unavailable as a matter of law.[44]  The court additionally found that Plaintiff failed to state a claim against Defendant Fort Bend because the factual allegations were inadequate with regard to Plaintiff's assertion that Defendant Fort Bend maintained a policy of failing to train, discipline, or supervise its officers.[45]  The court suggested that more specific allegations regarding how the county's training policy was inadequate could remedy Plaintiff's allegations against Defendant Fort Bend.[46]  As to Plaintiff's claims of wrongful seizure of person and property under the Fourth Amendment, the court recommended denying the motions.[47]

In the Memorandum and Recommendation, the court made legal

---

[42]     See Doc. 17, Defs.' Mot. to Dismiss.

[43]     See Doc. 19, Mem. & Recom. Dated July 19, 2016.

[44]     See id. pp. 15-19.

[45]     See id. pp. 19-25.

[46]     Id. p. 23.

[47]     See id. pp. 8-15.

11

findings of continuing importance.[48]  One is that the warrant did not authorize the seizure of the alprazolam and hydrocodone pills.[49] The court also determined that alprazolam and hydrocodone are included in Penalty Group 3 and are covered by Texas Health and Safety Code § ("Section") 481.117(a),[50] which states:

> Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3, unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

The court interpreted the statute to mean that "possession of a controlled substance via a prescription is not a crime; it is the possession of a controlled substance in the <u>absence</u> of a prescription that is proscribed by the statute."[51]  The court therefore concluded that the absence of a prescription is an element of the crime, not "an affirmative defense that may be disregarded when an officer is assessing the legality of possessing one hydrocodone pill found on a nightstand in that person's

---

[48]   See <u>id.</u> pp. 11-15

[49]   See <u>id.</u> pp. 11-12.

[50]   See <u>id.</u> p. 12.

[51]   <u>Id.</u> p. 15 (citing Section 481.117 and <u>Burnett v. Texas</u>, 488 S.W.3d 913, 920 (Tex. App.—Eastland 2016)).
     The court discussed Section 483.041 only in its analysis of <u>Kelly v. State</u>, Nos. 09-09-00151-CR, 09-09-00152-CR, 09-09-00153-CR, 2010 WL 1478907, at **1, 3-4 (Tex. App.—Beaumont Apr. 14, 2010)(unpublished), which addressed a conviction for possession of a dangerous drug without a prescription under Section 483.041 and did not mention Section 481.117.  <u>See</u> Doc. 19, Mem. & Recom. Dated July 19, 2016 p. 13.

residence."[52]

Plaintiff and Defendants Eder and Ng filed objections to the Memorandum and Recommendation.[53]  On August 24, 2016, prior to the district court's consideration of the objections, Plaintiff filed a motion for leave to amend her complaint for a second time.[54]  At the time of her motion, the court had not yet entered a scheduling order.  Plaintiff sought leave to amend her complaint to add the following allegations: (1) that Defendant Officers knew or should have known that Plaintiff and another resident possessed valid prescriptions for the pills found in the residence; (2) that Defendant Officers did not inquire whether Plaintiff had a prescription; (3) that Defendant Fort Bend had a policy, practice, procedure, custom, or training which permitted its officers to conduct an arrest inside a home without first discerning whether an individual had a prescription for the substance(s) found; (4) that Defendants' position on the possession of a valid prescription as an affirmative defense is unconstitutional and was the moving force behind Plaintiff's arrest; and (5) that Defendant Officers did not inform her of the charge for possession of a controlled substance in a school zone.[55]  Plaintiff sought to make a few other

---

[52]    Id. p. 15.

[53]    See Doc. 21, Defs. Eder & Ng's Objs.; Doc. 22, Pl.'s Objs.

[54]    See Doc. 25, Pl.'s Opposed Mot. for Leave to File a 2ᵈ Am. Compl.

[55]    See id. pp. 1-2.

modifications to her complaint but proposed no changes to either the privacy or failure-to-protect claim.[56]

On August 31, 2016, the district judge adopted the Memorandum and Recommendation, effectively dismissing the privacy and failure-to-protect claims as legally insufficient and the claims against Defendant Fort Bend as factually insufficient.[57]  On September 16, 2016, two days after Plaintiff's motion for leave to amend was submitted to the court pursuant to Local Rule 7.3, the court granted Plaintiff's motion for leave to amend.[58]

Federal Rule of Civil Procedure 15(a)(2), which applies in the absence of a scheduling order, advises the court grant leave freely "when justice so requires."  Here, justice required leave be granted because, despite the recommendation and its adoption, Plaintiff filed for leave while the undersigned's recommendation was pending before the district court and sought to rectify the pleading deficiencies upon which Defendant Fort Bend's motion had been granted.  At the time, the case was in its nascent stages.

As the court granted Plaintiff's motion for leave to amend with no exceptions, the court allowed Plaintiff to make all of the changes requested in her motion, including the additional factual

---

[56]   See id.

[57]   See Doc. 26, Ord. Dated Aug. 31, 2016.

[58]   See Doc. 29, Ord. Dated Sept. 16, 2016.

allegations against Defendant Fort Bend.[59]  That is, the court found
the amended allegations regarding Defendant Fort Bend's policy or
custom to be sufficient to state a claim against Defendant Fort
Bend, thus reinstating the county as a defendant.   In contrast,
Plaintiff did not seek leave to amend the privacy and failure-to-
protect claims, which were dismissed on legal grounds.   Those
claims could not have been remedied through additional factual
detail (had Plaintiff offered any) and were not revived by the
court's order granting leave to amend.[60]  No party objected to the
order granting Plaintiff leave to amend.

After amendment, Plaintiff's pleading raised the following
causes of action: (1) Fourth Amendment unreasonable seizure of her
person (count 1); and (2) Fourth Amendment unreasonable seizure of
her property (count 2).   With regard to these claims, Plaintiff
alleged that Defendant Fort Bend had "a policy, procedure, custom,
practice, or protocol of inadequately training, supervising, and/or
disciplining its officers" and could be expected to violate Fourth

---

[59]     See id.  No final judgment was requested or entered on behalf of
Defendant Fort Bend prior to the court's granting of leave to amend.   Federal
Rule of Civil Procedure 54(b) states that, absent a final judgment, any order
"that adjudicates fewer than all the claims or the rights and liabilities of
fewer than all the parties does not end the action as to any of the claims or
parties and may be revised at any time before the entry of a judgment
adjudicating all the claims and all the parties' rights and liabilities."

[60]     In count 3, Plaintiff alleged violations of a right to privacy with
regard to Plaintiff's prescription medication inside her home, and, in counts 4-
6, Plaintiff alleged violations of a right to protection from unreasonable
seizure inside her home, from unreasonable seizure of her papers and effects
inside her home, and from unreasonable intrusions into her privacy.   See Doc. 30,
Pl.'s 2$^{\text{d}}$ Am. Compl. pp. 17-31.

Amendment rights by taking:

> the unconstitutional official position that its officers
> need not establish the sine qua non of a criminal offense
> (in this case, the lack of a prescription); instead,
> Defendants unconstitutionally believe that said element
> is an affirmative defense which may be disregarded by
> officers in the field when they seek to determine
> probable cause.[61]

Plaintiff asserted that Defendant Fort Bend "created an extremely high risk that constitutional violations would ensue from its failures to inform its peace officers . . . of their relevant constitutional duties."[62]   Defendant Fort Bend did not file an answer to Plaintiff's Second Amended Complaint.[63]

On September 21, 2016, Defendants Baker and Dale filed an answer to the amended complaint, asserting twenty-two defenses.[64] They also "reurge[d] and incorporate[d] . . . by reference their previously filed [j]oint [m]otion to [d]ismiss."[65]   This one-sentence motion to dismiss fails to challenge the sufficiency of the additional facts alleged, to explain how the amendments affect the causes of action alleged against them, or to raise any new argument for dismissal.   Absent new, applicable arguments for

---

[61]   Id. pp. 31-32 (emphasis omitted).

[62]   Id. p. 34.

[63]   Without discussing the legal effect of the court's order granting leave to amend, Defendants Baker & Dale repeatedly stated in their answer that Defendant Fort Bend had been dismissed.   See, e.g., Doc. 32, Defs. Baker & Dale's Ans. to Pl.'s 2$^d$ Am. Compl. pp. 10, 15, 24.

[64]   See Doc. 32, Defs. Baker & Dale's Ans. to Pl.'s 2$^d$ Am. Compl. pp. 1-8.

[65]   Id. pp. 1-2 (emphasis omitted).

dismissal, the court finds that this one-sentence effort is not a legitimate motion to dismiss that requires the court's consideration. It is therefore stricken from the record.

On September 30, 2016, Defendants Eder and Ng filed an amended answer, asserting three defenses.[66] Shortly thereafter, the court held a scheduling conference, and among the deadlines set were October 28, 2016, for amending pleadings and April 21, 2017, for filing dispositive and nondispositive motions.[67]

On April 21, 2017, Defendants Eder and Ng jointly filed a motion for summary judgment, as did Defendants Baker and Dale.[68] In addition to filing a timely response, Plaintiff filed a motion to exclude summary judgment evidence, specifically, the expert report of Kurt Sistrunk ("Sistrunk"), which both pairs of Defendant Officers cited in their motions for summary judgment.[69]

On May 22, 2017, while the briefing continued on the motions for summary judgment, Plaintiff filed a motion for leave to amend her claim a third time.[70] Plaintiff filed the motion based on

---

[66]    See Doc. 33, Defs. Eder & Ng's Ans. to Pl.'s 2ᵈ Am. Compl. pp. 1-2.

[67]    See Doc. 34, Min. Entry Ord. Dated Oct. 4, 2016; Doc. 35, Docket Control Ord. Dated Oct. 4, 2016.

[68]    See Doc. 38, Defs. Eder & Ng's Mot. for Summ. J.; Doc. 39, Defs. Baker & Dale's Mot. for Summ. J.

[69]    See Doc. 38-2, Ex. 2 to Defs. Eder & Ng's Mot. for Summ. J., Report of Sistrunk; Doc. 39-3, Ex. 3-A to Defs. Baker & Dale's Mot. for Summ. J., Report of Sistrunk; Doc. 40, Pl.'s Mot. to Exclude Defs.' Summ. J. Evid.; Doc. 41, Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J.

[70]    See Doc. 42, Pl.'s Opposed Mot. for Leave to File an Amended Complaint.

testimony obtained through discovery suggesting that Defendant Fort Bend intentionally maintained a policy of treating a prescription for a controlled substance as an "affirmative defense[] to a crime (which can be ignored by both officers in the field and the State)."[71]   Plaintiff sought to amend her complaint to reassert claims against Defendant Fort Bend, which she agreed had been dismissed months earlier.[72]

Plaintiff cited evidence and statements from Defendant Officers' motions for summary judgment in support of her allegation that Defendant Fort Bend's policy was to consider possession of a prescription to be an affirmative defense.[73]   As the motion was filed months after the court's deadline for amending pleadings, Plaintiff argued that leave to amend should be freely given upon a showing of good cause.[74]   Plaintiff argued that, in her Second Amended Complaint, she had made "a good faith allegation that Defendant Fort Bend County was subject to [imputed] liability," but she "could neither have guessed nor responsibly alleged that Defendants' purported authority to arrest Plaintiff was the county-wide application of a facially inapplicable statute and said

---

[71]    Id. p. 1.

[72]    See id. p. 2.

[73]    See id. pp. 2-7.

[74]    See id. p. 7.

18

statu[t]e is not listed in any charging instrument."[75]   In her motion, Plaintiff presented a lengthy discussion of the factors routinely considered in determining whether good cause for amendment exists.[76]

As discussed above, the court previously granted Plaintiff leave to amend in order to add factual allegations that Defendant Fort Bend maintained a policy or tolerated a custom of allowing arrests for possession of controlled substances without determining whether the arrestees possessed the relevant prescriptions.  That theory was the primary point of Plaintiff's earlier motion for leave to amend, and Plaintiff's Second Amended Complaint contains sufficiently detailed allegations to put Defendant Fort Bend on notice as to the nature of Plaintiff's claim of imputed liability.  The evidence Plaintiff has amassed in support of her theory of county liability becomes relevant at the summary-judgment stage of this action, not at the pleading stage.

To repeat, Plaintiff's Second Amended Complaint was sufficient to establish a claim against Defendant Fort Bend based on its policy or custom of shifting an element of the relevant possession crime to the defendant in the form of an affirmative defense.  Because she was able to sufficiently plead the same factual basis for the claim against Defendant Fort Bend in August 2016, her

---

[75]   Id. p. 8.

[76]   See id. pp. 7-21.

assertion that she did not have a basis to make the allegation until discovery simply rings untrue. As a result, the court finds that Plaintiff fails to establish good cause for amending, and her motion must be denied.[77]

The parties completed discovery earlier this year, and Defendant Officers filed motions for summary judgment, which are fully briefed. Before addressing those motions, the court considers Plaintiff's motion to exclude the expert testimony of Sistrunk.

## II. Plaintiff's Motion to Exclude Summary Judgment Evidence

This motion targets the expert report of Kurt Sistrunk. Plaintiff argues that the report: (1) presents an improper legal opinion; (2) is irrelevant; (3) draws prejudicial conclusions from the evidence; (4) is not based on reliable principles, methods, or application to the facts; (5) is inadmissible under Federal Rule of Evidence 403 because it either will mislead or confuse the jury or will be cumulative of the court's instructions; and (6) contains hearsay. Defendants argue that it is an untimely filed Daubert[78] motion.

An expert's opinion is admissible in evidence if the expert's knowledge will help the jury understand the evidence and the

---

[77]     To be clear, the court finds the amendment unnecessary because Plaintiff's Second Amended Complaint is the live pleading, which alleges constitutional claims against Defendant Fort Bend pursuant to the same theory as in her proposed amendment.

[78]     Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

20

opinion "is based on sufficient facts or data," "reliable principles and methods," and the reliable application of "the principles and methods to the facts of the case." Fed. R. Evid. 702.   In addition to launching one clear <u>Daubert</u> challenge to Sistrunk's report, Plaintiff adds several other challenges pursuant to the Federal Rules of Evidence.   Plaintiff cites <u>Daubert</u> in her motion but, in her reply, offers a rather confusing non-<u>Daubert</u> description of the motion: "[I]t is designedly a motion to exclude for the purposes of summary judgment evidence so that Plaintiff can wield it as evidence against Fort Bend County."[79]

Plaintiff's alternative description fails to avoid the obvious—that the motion is an untimely filed <u>Daubert</u> motion.   The deadline for filing nondispositive motions was April 21, 2017.[80] Plaintiff filed this motion on May 12, 2017.[81]   Plaintiff's spends little effort toward showing good cause for missing the deadline. She argues in her reply that Plaintiff's counsel did not and could not have fully comprehended "the nature of Defendants' argument invoking Texas Health and Safety Code § 483.001[,] et[] seq. . . . until after Defendants filed their motions for summary judgment."[82]

---

[79]     Doc. 48, Pl.'s Consol. Reply to Defs.' Resps. to Pl.'s Mot. to Exclude Summ. J. Evid. p. 1.

[80]     <u>See</u> Doc. 35, Docket Control Ord. Dated Oct. 4, 2016.

[81]     <u>See</u> Doc. 40, Pl.'s Mot. to Exclude Defs.' Summ. J. Evid.

[82]     <u>See</u> Doc. 48, Pl.'s Consol. Reply to Defs.' Resps. to Pl.'s Mot. to Exclude Summ. J. Evid. p. 2.

This statement does not come close to satisfying Federal Rule of Civil Procedure 16's good cause requirement.  Importantly, no evidence indicates that Plaintiff was charged under the provisions of Chapter 483 of the Texas Health and Safety Code, and, as explained in a subsequent section, possession of alprazolam and hydrocodone does not fall within that statute's coverage.

Plaintiff's motion to exclude is untimely and must be stricken.

### III.  Defendant Officers' Motions for Summary Judgment

Defendants Eder and Ng argue that the evidence fails to show that they violated Plaintiff's constitutional rights or that they are not entitled to qualified immunity.  Specifically, they argue that Defendant Eder arrested Plaintiff with probable cause, that Defendant Ng did not arrest Plaintiff, and that no evidence supports the allegation that they seized currency from Plaintiff.

Defendants Baker and Dale argue that the evidence shows that they were not personally involved in the constitutional violations alleged by Plaintiff.  They specifically contend that they had no knowledge whether valid prescriptions covered the alprazolam and hydrocodone pills, that they did not influence the grand jury or withhold information from the grand jury, and that they did not seize the currency.  In their motion, they based their probable-cause argument entirely on Texas Health and Safety Code Chapter 483.

Plaintiff responds that Defendant Eder did not have probable cause to arrest her and that the other Defendant Officers permitted Defendant Eder to arrest her without probable cause. She also contends that she was not asked whether she possessed a prescription for the pills, that she was not notified of the charge on which her arrest was based, and that the grand jury's indictment was not based on all relevant facts.

The admissibility of certain evidence is disputed. After outlining the applicable law, the court addresses the evidentiary issues before turning to the merits of Defendant Officers' dispositive motions.

## A. Applicable Law

Procedural law and substantive law guide the court's review of the pending dispositive motions.

### 1. Summary Judgment

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be

genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

**2.  Section 1983 and Fourth Amendment**

In order to prevail on a claim under Section 1983,[83] a

---

[83]     The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

plaintiff must establish that the defendant deprived the plaintiff of her constitutional rights while acting under the color of state law.  Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017). Government officials have qualified immunity from Section 1983 "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity protects an officer even for reasonable mistakes in judgment. See id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004))("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"); Ashcroft v. Al-Kidd, 563 U.S. 731, 743 (2011)("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

By invoking qualified immunity, a summary judgment movant shifts the burden to the nonmovant to rebut the movant's assertion. Cantrell v. City of Murphy, 666 F.3d 911, 918 (5th Cir. 2012).  In order to overcome an assertion of qualified immunity, a plaintiff

---

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

must produce evidence that the alleged conduct violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct.  See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011).  The Supreme Court held that the order in which these two considerations are addressed is at the court's discretion.  See Pearson, 555 U.S. 818-21.

Plaintiff's remaining claims of unreasonable seizures of person and property arise pursuant to the protections of the Fourth Amendment.  The Fourth Amendment,[84] applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Reasonableness is the ultimate measure of the constitutionality of a seizure of person or property.  See Trent v. Wade, 776 F.3d 368, 377 (5th Cir. 2015)(internal quotation marks omitted)(quoting Fernandez v. California, _____ U.S. _____, 134 S.Ct. 1126, 1132 (2014)).

A warrantless arrest must be supported by "probable cause to believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  The standard for

---

[84]   The full text of the Fourth Amendment is:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

the existence of probable cause is an objective one requiring that the officer draw a reasonable conclusion from the facts available to him at the time of the arrest.  Id.; see also Blackwell v. Barton, 34 F.3d 298, 303 (5th Cir. 1994)(stating that probable cause exists if a reasonable person, based on the facts available at the time, would believe that an offense has been committed and that the individual being arrested is the guilty party).

A warrantless seizure of evidence in plain view is reasonable when the officer is legally in the location from which he viewed the item seized and the "incriminating nature of the item [is] immediately apparent." United States v. Turner, 839 F.3d 429, 433 (5th Cir. 2016)(quoting Horton v. California, 496 U.S. 128, 136 (1990), and Arizona v. Hicks, 480 U.S. 321, 326 (1987)).  "The incriminating nature of an item is immediately apparent if the officers have probable cause to believe that the item is either evidence of a crime or contraband." Id. (quoting United States v. Buchanan, 70 F.3d 818, 826 (5th Cir. 1995)).  Probable cause as it relates to seizure of evidence requires that the officer determine the existence of a "practical, nontechnical probability that incriminating evidence is involved." Id. (quoting United States v. Espinoza, 826 F.2d 317, 319 (5th Cir. 1987)).

These constitutional standards were clearly established at the time of Plaintiff's arrest, which leaves the court only to consider whether Plaintiff produced sufficient evidence that Defendant

Officers' conduct violated Plaintiff's constitutional rights to be free from unreasonable arrests and seizures.

## B.  Discussion on Evidentiary Issues

A party must support its factual positions on summary judgment by citing to particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).   An affidavit or declaration is competent summary judgment evidence if it is based "on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).   Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence.  Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5th Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that contain material that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.   Cf. Lee v. Offshore Logistical & Transp., L.L.C., 859 F.3d 353, 355 (5th Cir. 2017)(explaining that the rule seeks "[t]o avoid the use of materials that lack authenticity or violate other evidentiary rules").   The proponent of the challenged exhibit must prove admissibility.   See id. (quoting Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment, as stating that the proponent may show that the exhibit is admissible as presented or

that it can be presented in admissible form).  The trial court has discretion to determine whether "to admit or exclude evidence." See MCI Comm'ns Servs., Inc. v. Hagan, 641 F.3d 112, 117 (5th Cir. 2011)(stating that the standard of review for evidentiary decisions is abuse of discretion).

Only relevant evidence is admissible.  Fed. R. Evid. 402. Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Hearsay is not admissible evidence.  Fed. R. Evid. 802. Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  The Federal Rules of Evidence list twenty-nine exceptions to the rule against hearsay. Fed. R. Evid. 803-804, 807.

### 1. Plaintiff's Objections

Plaintiff objects to statements in the declarations of Defendants Eder and Ng and the affidavits of Defendants Baker and Dale.  Plaintiff also challenges the admissibility of the grand

jury indictment, the search and arrest warrants, and Defendant Eder's Offense Report.[85]

Plaintiff contends that evidence related to the following topics is irrelevant and/or more prejudicial than valuable: (1) Defendant Officers' licensure and training; (2) the investigation into Sherman Jones, Plaintiff's husband, including information regarding the confidential informant and cocaine sales; (3) the arrest and search warrants; (4) the grand jury indictment; (5) the guidance of prosecutors and judges on the interpretation of the criminal law on which Defendant Eder relied; and (6) any searches performed by Defendant Officers for prescription bottles or labels. The grand jury indictment and the searches for prescription bottles go to the key issue of whether probable cause existed to support Plaintiff's arrest. The other topics are more tangentially relevant but, at the very least, provide background and/or provide insight into the course of events.

None of the above topics is more prejudicial than valuable with the possible exception of the details of the investigation into Sherman Jones, which provides the justification for the search of Plaintiff's residence. That investigation is unrelated to her arrest and the seizure of the alprazolam and hydrocodone pills. That said, the court is not prejudiced by the information on

---

[85]   Defendants Eder and Ng withdrew Defendant Eder's Offense Report as an exhibit, mooting all of Plaintiff's objections thereto. See Doc. 43, Defs. Eder & Ng's Objs. & Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 7.

summary judgment and will leave consideration of what evidence should be presented at trial to the trial judge. These objections are overruled.

Plaintiff objects to statements on other topics made by Defendants Baker and Dale in their affidavits: (1) details of the execution of the search warrant, including interaction with the children present, the discovery of the alprazolam and hydrocodone pills, and other evidence found; (2) their lack of involvement in the transportation of Plaintiff to the jail or any other interaction with her; (3) discussion of the criminal classification of the pills found; (4) their opinions on whether the arrest was reasonable and whether they legally carried out their duties. The details of the execution of the search warrant are relevant to the legality of Plaintiff's arrest. Defendants Baker and Dale's lack of contact with Plaintiff is relevant to whether they played any role in arresting her, and their opinions on the reasonableness and legality of Defendant Officers' actions speak to qualified immunity. The other statements factually meet the liberal relevance standard in that they provide background and context. These objections are overruled.

Plaintiff complains that the Defendant Officers' statements about the nonparty officer's discovery of the pills and the identification of those pills with the assistance of a poison control center amounted to hearsay, of which they lacked personal

knowledge.   Plaintiff continues this line of objections to the conclusion that no evidence exists to prove that an alprazolam was found in Plaintiff's bedroom.   This is an absurd argument in light of the absence of a dispute about either the discovery of the alprazolam or the identification of the types of pills found. Plaintiff alleged in her complaint that Defendant Officers "found one and a half prescription pills," that she "was the ultimate user of the hydrocodone on her nightstand," and that her "father was the ultimate user of the alprazolam seized by Defendant [Officers]."[86] These objections are overruled.

Plaintiff objects to several statements in Defendants Baker's and Dale's affidavits as offering inadmissible legal conclusions, in part, because they were not identified as experts.   One of the statements expresses the opinion that a reasonable officer would not have believed that the arrest was unconstitutional based on the facts and circumstances facing Defendant Eder.   Another of the challenged statements concludes that the officers were legally in the home and the alprazolam and hydrocodone pills were in plain view.   The third discusses the criminal statute regarding possession of controlled substances.   In fact, Defendants Baker and Dale did identify themselves as non-retained experts.[87]   These statements, to the extent that they are legal conclusions are

---

[86]    See Doc. 30, Pl.'s 2$^{d}$ Am. Compl. pp. 8, 10.

[87]    See Doc. 37, Defs. Baker & Dale's Designation of Expert Witnesses pp. 4-5.

within these officers' expert knowledge.  These objections are overruled.

Several statements are inadmissible.  Both Defendants Baker and Dale stated in their affidavits that, in their experiences, "local criminals, upon being made aware of a law enforcement raid having been made upon a suspected drug house, will often break into that house as soon as possible after law enforcement leaves the scene, in order to search for any leftover weapons, money, and/or drugs."[88]  That opinion is speculative, as are the remaining statements of similar effect in their affidavits regarding what they believe happened to the $600 that Plaintiff alleged was taken from her home.  Additionally, Defendants Baker and Dale made statements in their affidavits about Plaintiff's deposition testimony regarding the extent of her knowledge of her husband's involvement in drug activity.  They have no personal knowledge of that topic.  Finally, Defendants Eder and Ng both stated that they do not believe that any law enforcement officer seized the $600. These statements are also speculative.  These objections are sustained.

## 2.  Defendants Eder and Ng's Objection

Defendants Eder and Ng object to Plaintiff's Exhibit C, the medical note pertaining to James Jackson's visit to an emergency

---

[88]     Doc. 39-1, Ex. 1 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Dale ¶ 42; Doc. 39-2, Ex. 2 to Defs. Baker & Dale's Mot. for Summ. J., Aff. of Def. Baker ¶ 42.

room that included a prescription for alprazolam.  Plaintiff cites this prescription as proof that her father possessed a prescription for the partial pill found in her bedroom during the search.[89]  The note, which is supported by a business records affidavit, passes the lenient test for relevance in that it arguably has a slight tendency to make more probable than not that Plaintiff's father (assuming her father's name is James Jackson) had a prescription for alprazolam.  Defendants Eder & Ng's objection is overruled.

**C.   Discussion on Summary Judgment Issues**

The remaining causes of action are based on the seizure of Plaintiff's person by arrest and the seizures of $600 in currency and the alprazolam and hydrocodone pills.

**1.   Arrest**

Defendant Eder, as the arresting officer, is in a different position vis-à-vis liability than the other Defendant Officers. The court first addresses the evidence against him.

a.   Defendant Eder

Defendant Eder originally argued that Section § 483.041 supported Plaintiff's arrest and that the only element of the crime was possession of a dangerous drug.  Similar to the language of Section 481.117(a),[90] Section 483.041(a) reads:

---

[89]    See Doc. 41, Pl.'s Consol. Resp. to Def. Officers' Mots. for Summ. J. pp. 2, 15.

[90]    Section 481.117(a) states:

Except as authorized by this chapter, a person commits an offense if

34

> A person commits an offense if the person possesses a dangerous drug unless the person obtains the drug from a pharmacist acting in the manner described by Section 483.042(a)(1) or a practitioner acting in the manner described by Section 483.042(a)(2).

"Dangerous drug" is defined as "a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act)." Tex. Health & Safety Code § 483.001(2). Section 483.042(a)(1) refers to drugs delivered by pharmacists pursuant to a prescription, and Section 483.042(a)(2) refers to practitioners acting in the course of practice. Alprazolam and hydrocodone are in Penalty Group 3 and do not fall within the coverage of Section 483.041(a). See Tex. Health & Safety Code § 481.104(a)(2),(4). Accordingly, Section 483.041(a) cannot justify Plaintiff's arrest for possession of alprazolam and hydrocodone.[91]

In the original Memorandum, Recommendation, and Order on the summary judgment motions, the court pointed out that it had previously interpreted Section 481.117(a) as prohibiting possession of a controlled substance *without a prescription*, not as merely

---

the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3, unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

[91] Moreover, no evidence indicates that Plaintiff was arrested pursuant to Section 483.041(a) or that the grand jury considered that provision. In fact, the evidence is undisputed that Plaintiff was charged under Section 481.117(a). The court stated as much in its July 2016 Memorandum and Recommendation that addressed Defendants' motions to dismiss.

prohibiting the possession of the controlled substance.[92]  Despite

that earlier ruling, Defendant Eder persisted in arguing on summary

judgment that Section 483.041(a) supported Plaintiff's arrest.  In

his objections, Defendant Eder switches statutes, arguing that

Section 481.184(a) places the burden on the defendant to negate any

exemption or exception allowed by the Texas Controlled Substances

Act.  Section 481.184(a) states:

> The state is not required to negate an exemption or
> exception provided by this chapter in a complaint,
> information, indictment, or other pleading or in any
> trial, hearing, or other proceeding under this chapter.
> A person claiming the benefit of an exemption or
> exception has the burden of going forward with the
> evidence with respect to the exemption or exception.

The court's interpretation implicitly held that this provision

did not apply because the possession of a prescription was not an

exemption or an exception but the lack of a prescription was an

element of the crime.  Defendant Eder points the court to <u>Threlkeld</u>

<u>v. Texas</u>, 558 S.W.2d 472, 473 (Tex. Ct. Crim. Appeals 1977), which

held:

> Prior to the enactment of the Controlled Substances
> Act [the] argument [that possession under the provision
> was "not illegal per se but becomes illegal only when not
> obtained directly from, or pursuant to, a valid
> prescription of an practitioner"] would have been well
> taken.  The traditional rule upon which appellant relies,
> however, is no longer applicable to indictments charging
> possession of controlled substances.  [Tex. Health &
> Safety Code 481.184(a)'s predecessor] expressly removed

---

[92]    <u>See</u> Doc. 19, Mem. & Recom. Dated July 19, 2016 p. 15 (citing <u>Burnett</u>,
488 S.W.3d at 920, as stating that, although the State had represented that it
was illegal to carry pills outside of their prescription containers, the court
could find no such law).

the burden of negating in an indictment any exemptions or
exceptions under the act and placed the burden of going
forward with the evidence with respect to such exemptions
or exceptions upon the defendant.

Neither Plaintiff nor the court's own research uncovered any more
recent cases that call into question <u>Threlkeld's</u> holding.

Faced with this applicable law, the court must reconsider its
analysis of probable cause.  Plaintiff does not dispute that the
presence of the controlled substances in her shared bedroom
arguably gave rise to probable cause that she knowingly or
intentionally possessed the pills (jointly with her husband).[93]  As
possession alone was enough to give Defendant Eder probable cause
existed to believe that Plaintiff violated Section 481.117(a),
Plaintiff has failed to raise a fact issue on her constitutional
claim of false arrest against Defendant Eder.

b.  <u>Defendants Baker, Dale, and Ng</u>

Absent evidence that Defendant Eder, the arresting officer,
unconstitutionally seized Plaintiff, the other Defendant officers
cannot be held liable.  Defendant Officers stated under oath that
Defendant Eder arrested Plaintiff based only on his own assessment
of probable cause.  Plaintiff produced no evidence contradicting
this conclusion.  No evidence suggests that Defendant Eder
requested or received any input from any of the other Defendant
Officers or even places the other Defendant Officers in proximity

---

[93]    She also does not contend that probable cause was lacking with regard
to possession within 1,000 feet of a school.

to Plaintiff and Defendant Eder at the time of Plaintiff's arrest.
Absent personal involvement in any aspect of Plaintiff's arrest,
Defendants Baker, Dale, and Ng could not be held liable for false
arrest, even if Defendant Eder had lacked probable cause.
Plaintiff's claims of supervisory or bystander liability also fail
in the absence of evidence of a false arrest.

Plaintiff's Fourth Amendment claim that her right to be free
from unreasonable arrest was violated cannot survive summary
judgment.

## 2.  Seizure of Property

Plaintiff's unconstitutional seizure of property concerns the
seizure of the alprazolam and hydrocodone pills and the
disappearance of $600.

As the court previously held, the warrant did not authorize
the seizure of the alprazolam and hydrocodone pills.   The
constitutionality of the seizure therefore rests on whether the
circumstances gave rise to "probable cause to believe that the item
[was] either evidence of a crime or contraband."  Turner, 839 F.3d
at 433.  Because Defendant Eder had probable cause to believe that
Plaintiff was committing the criminal offense of possession of a
controlled substance, seizure of the pills was constitutional.

Regarding Plaintiff's claim that Defendant Officers illegally
seized $600 in currency, Plaintiff testified that it disappeared
from a shirt pocket in her closet on the day of the search.   The

38

evidence indicates that it was not seized pursuant to the search warrant as it was not listed on the inventory that was returned to the court.  Defendant Officers also deny that they "seized" the currency and make no argument that probable cause existed for the seizure of that money.  Nevertheless, Plaintiff's testimony regarding the disappearance of the $600 raises a fact question whether Defendant Officers were responsible for the disappearance of the funds during their search of the residence.  If so, their actions clearly violated Plaintiff's constitutional right to be free from unreasonable seizures.  The jury will have to resolve this dispute.

This claim survives summary judgment as to all Defendant Officers.

### 3.  Liability of Defendant Fort Bend

A county may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011).  To succeed on a claim under Section 1983, the plaintiff must demonstrate that an official policy promulgated by the county policymaker was the moving force behind the alleged constitutional violation.  Peña v. City of Rio Grande City, ___ F.3d ___, 2018 WL 386661, at *5 (5th Cir. 2018).

The evidence does not support a constitutional claim for false arrest.  Regardless of Plaintiff's allegations regarding Defendant Fort Bend's policies, Plaintiff cannot seek liability against

39

Defendant Fort Bend in the absence of a constitutional violation. With regard to Plaintiff's only remaining constitutional claim for illegal seizure of cash, Plaintiff made no allegation and produced no evidence of a policy or widespread custom of officers' taking currency without probable cause from the scenes of arrests.

Plaintiff's claims against Defendant Fort Bend cannot survive.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants Eder and Ng's motion be **GRANTED IN PART AND DENIED IN PART** and Defendants Baker and Dale's motion be **GRANTED IN PART AND DENIED IN PART**.  The court **DENIES** Plaintiff's motion for leave to amend and **STRIKES** Plaintiff's motion to exclude.

The following claim must proceed to trial:  Plaintiff's claim against Defendants Baker, Dale, Eder, and Ng for unconstitutional seizure of Plaintiff's currency.

The Clerk shall send copies of this Amended Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such

40

objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of February, 2018.


_____

U.S. MAGISTRATE JUDGE